THE EVANSVILLE AND CRAWFORDSVILLE RAILROAD COMPANY
*v.* YOUNG.

COMMON CARRIERS—USAGE.—Where, in a suit against a railroad company for the loss of poultry shipped, the defense was a usage of railroads to carry such freight only when accompanied by the owner, and at his risk, and that the loss had occurred through the fault of the owner, in not keeping the coops properly righted on the cars, it was held that evidence from the plaintiff, and others who had been accustomed to ship on railroads, that they had never heard of such usage, was admissible.

SAME.—Whether common carriers could, by a usage of their own creation, or by mere notice, limit their ordinary liability, was questioned.

SAME—EVIDENCE.—On the trial, the company introduced a witness to prove that the plaintiff had used the stock passes of the company, and then offered in evidence one of those blank passes, on the back of which was a statement that the owner of stock should feed and take care of it at his own expense and risk, and that he assumed all risk of injury that the animals might do themselves, or that might arise from the delay of trains or otherwise.

*Held,* that the evidence did not tend to prove the existence of the usage pleaded, and was properly rejected.

APPEAL from the *Vanderburgh* Common Pleas.

ELLIOTT, J.—*Young* sued the railroad company before a justice of the peace for the price of poultry alleged to have been shipped on the railroad at *Terre Haute* for *Evansville,* and lost from the train by carelessness on the part of the

servants of the railroad company having charge of the train. There was judgment in favor of the plaintiff, from which the company appealed to the Court of Common Pleas, where the defendant filed an answer in substance as follows: 'That the defendant is a corporation organized under the laws of *Indiana*, and is a common carrier; that ever since the establishment of railroads in *Indiana* and other Western States, it has been the uniform usage and custom of railroad corporations in such States to carry poultry and other live animals only on certain terms and conditions, viz: that the owner shall accompany the animals upon the train, and have the same under his personal charge and supervision; that he shall take the care, charge and risk of said animals arising from all causes not connected with or growing out of the actual negligence of the employees of said corporation; that such owners of animals should carry the same, for their own convenience, upon platform cars, and should right and regulate, and keep righted and regulated, the coops in which such animals are kept and carried, and that said corporations are not held liable for accidents resulting from the ordinary concussion of the cars from traveling in the usual way; that in consideration of this personal care, charge and responsibility, by the terms of said usage, said railroad corporations carry poultry for a rate of freight less, by twenty-five per cent., than the usual rate for like property, and twenty-five per cent. less than it would be worth to carry the animals in the usual way, and assuming the usual responsibility and charge of the property; that on the day mentioned in the complaint, *Young* produced upon the appellant's road a car loaded with poultry, and requested to have them transported to *Evansville;* that *Young* had the personal care and charge of the car, agreeably to the usage; that appellant, in accordance with said usage, and at said reduced rate of fare, undertook to transport said car-load of poultry to *Evansville*, and in consideration of the care and risk assumed by *Young* under said usage, the appellant transported him

upon said car, at his request, free of fare, which is $5; that while transporting the car in the usual manner, by the negligence of *Young* in not keeping the coops righted, according to the terms and effect of said usage, one coop was shaken off and the poultry lost; and that this is the undertaking mentioned in the complaint, and that this is the negligence complained of, and that the poultry was worth $53. Reply in denial. Trial by jury. Verdict for plaintiff; upon which, over a motion for a new trial, the court rendered judgment. The bill of exceptions contains the evidence. The railroad company appeals.

Several questions are presented upon the motion for a new trial. The deposition of the plaintiff was taken in his behalf. After its publication, the defendant's counsel moved the court to suppress the third question and the answer thereto, which are as follows:

"Question 3. What do you know, if anything, about a custom of railroad companies to receive poultry at the risk of the owner only?

"Answer. I do not know of any such custom, nor was anything said to me about such custom at the time of said shipment."

The plea avers that the alleged custom or usage was a general one with all the railroad companies in the Western States. To render a local commercial usage or custom valid to control a general principle, it should be well defined, be in general use at the place by those engaged in the business to which it is applicable, and of such standing as to raise a reasonable presumption that it is known to those engaged in the business — in this case, to those engaged in making such shipments. It should be uniform, and so well settled that those engaged in the trade must be considered as contracting in reference to it. *Renner* v. *Bank of Columbia*, 9 Wheat. 581; *Wallace* v. *Morgan*, 26 Ind. 399.

The plaintiff testified that his business, for the preceding twelve months, had been that of buying, shipping and selling poultry. Under such circumstances, if such a custom

was well established and defined, it would be reasonable to presume that he would have known it; and the fact that he had never heard of such usage is, at least, a circumstance tending to rebut the defendant's evidence of the existence of such usage. We think, therefore, that the evidence was proper.

A demurrer to the answer was overruled, and the ruling excepted to, but no cross error is assigned upon that ruling. The question of the sufficiency of the answer is not, therefore, directly before us, and we decide nothing in reference to it.

It would seem to be well settled that a common carrier of goods may limit his liability as an insurer by express contract; but we are not now prepared to hold that common carriers may so limit their liability by a usage or custom of their own creation, or by notice. The law holding common carriers responsible as insurers rests its foundation on wise principles of the soundest public policy, and to permit them to limit or avoid such liability at will, by notice, or by any usage which they may themselves inaugurate, would defeat the policy of the law, and would seem to be of more than doubtful propriety.

The appellant, in support of the answer, refers to 2 Redfield on Railways, sec. 1, and note, and *Van Santvord* v. *St. John*, 6 Hill 157; but these authorities do not seem to sustain the position contended for. But see *Dorr* v. *The New Jersey Steam Navigation Co.*, 11 N. Y. 485; 1 Parsons on Con. 3d ed. 703, *et seq.;* 2 *id.*, 5th ed. 233, *et seq.*, and notes, where the leading cases bearing on the subject are collected and referred to. But we need not pursue the subject here. The answer admits the defendant's liability for the negligence of its servants, even under the alleged usage. The poultry was in coops placed on a platform car, having no side railing, and the evidence strongly tends to show that the loss was caused by running the train at an improper speed over a curve in the road, thereby throwing a part

of the coops off the car. On this ground, we think the evidence sustained the finding of the jury.

The plaintiff introduced as a witness one Captain *Smith*, who testified that he was a commission merchant at *Evansville*, in receiving and forwarding freights by river and railroad; that he knew nothing about the usage of the defendant or any other railroad company as to carrying poultry at their own risk or at the risk of the owner. He was then asked by the plaintiff "whether or not he knew of any usage limiting the liability of any such railroad company, and by which poultry was carried by them only at the risk of the owner." To which the defendant objected, for the reason that the witness, having already testified that he did not know what the usage of railroad companies on the subject is, is not competent to testify on the subject; but the court overruled the objection, and the witness answered that he did not know of any such usage. This ruling is also complained of. We think the ruling was correct, for the same reason stated before in reference to the deposition of the plaintiff.

Another ruling of the court below assigned for error is this: One *Kirkman*, the conductor of the train on which the poultry was shipped, having testified that the plaintiff was on the train, and that he recognized him as a person he had met before on the train, and from whom the witness thought he had once previously, if not oftener, taken up one of the stock passes of the company on the train, though he had no pass that day, but was permitted to pass free, the defendant thereupon offered in evidence a blank pass, and the indorsement thereon, of the description referred to, which are as follows:

"*Evansville and Crawfordsville Railroad.*

"STOCK SHIPPER'S PASS.

" Good only on freight train, and not good for return trip.

" ——— Station, ———.

" ———, in charge of ———, is entitled to pass free from ——— to ———.

" SMITH, Agent."

[INDORSED.]

" Stock shippers are entitled to passes as follows: One pass for one, two or three car loads; two for four or five car loads; three for six or more car loads. The owner is to load, unload, feed, water and take care of his stock at his own expense and risk, and is to assume all risk of injury and damage that animals may do themselves or each other, or which may arise from delay of trains or otherwise."

But the court rejected the evidence, to which the appellant excepted. We think the evidence was properly excluded. It did not legitimately tend to prove the existence of the alleged custom, which was one of the material points in issue, and the only one to which it is claimed to have been directed. We see nothing in the case justifying a reversal of the judgment.

The judgment is affirmed, with ten per cent. damages and costs.

*A. Iglehart*, for appellant.

*A. Dyer*, for appellee.